Good morning, ladies and gentlemen. The court is now in session in the matter of Canyon County v. Syngenta Seeds Inc. et al. Case number 06-35112. Each side has 20 minutes for argument, and multiple sides, if you'll designate to me how you're dividing your time when you approach the podium. Howard Foster May it please the Court, I'm Howard Foster for the appellant, Canyon County, and I would like to reserve five minutes of my time for rebuttal. Kagan Good morning. Foster Good morning. The district court interpreted the complaint as seeking injuries to the governmental injuries of Canyon County in this case, which was incorrect. What Canyon County was seeking was not what was sought by the town of West Hartford and in Hawaii, which were antitrust cases in which the States were suing under the Clayton Antitrust Act. The district court should have applied the reasoning that this Court issued in Diaz v. Gage, which held that under RICO, which has a looser proximate causation and business or injury standard under 1964C, that all that is required is an interest to business or property caused by a predicate act of racketeering injury. The district court was incorrect in reading into RICO the requirement that there be a commercial injury involved or a commercial interest involved in the lawsuit. The district court found that commercial injury and commercial interest from these antitrust cases, Hawaii and town of West Hartford, but the Ninth Circuit has never recognized any such restriction under RICO. Kagan Well, but you're – I'm familiar with Diaz. I think I was in the dissent on that. Foster Yes, you were. Kagan But that was the dissent. So – but you're relying on Oakland County also, too, the Sixth Circuit case, correct? Foster We look – we do cite that heavily, and we do ask the Court to look there. I just don't see a difference there in what Oakland County was suing for and paying higher prices. Kagan Well, except they were a consumer. And tell me how you might qualify as a consumer in any of these situations. It would seem to be that you're – you want to recover for providing public services, you know, that is what – that's what municipalities do. Foster Oakland County may have been a consumer of water or sewage services, as that case was described. But at bottom, what it was seeking was paying excess prices. Prices were too high. Now, Canyon County is not suing as a consumer. That is quite true, and we readily concede that. But there is no consumer injury requirement in 1964c. And as the Supreme Court said in Sedema, and as this case said in Diaz v. Gates, racketeering activity is a broad concept. All it requires is damage to business or property caused by a predicate act. There is no racketeering injury requirement, as the Supreme Court said in Sedema, which the Second Circuit had read into the statute and said, well, we have this amorphous standard which we believe applies. You can't use RICO unless your injury is what we consider to be a racketeering injury. And I think that is more or less what the district court did here. The district judge said, your injury, as I see it, is not a commercial injury. And so do you essentially concede that you're not you're not receiving any goods or services from the defendants here? Correct. We're not. And it's not required. And you're saying that's not required. And it's not required under RICO that you be purchasing goods or services. The antitrust statute, the Clayton Act in Section 4, has an antitrust injury requirement, as the Supreme Court noted in Holmes, in footnote 14, which has no analog in RICO. What specific injury to business or property does the county allege Mr. Pacheco caused? Mr. Pacheco was putting illegal immigrants onto the county's indigent fund, directly causing the county to pay out money for people who are not entitled to receive money from the county under the indigent fund. Now, he could be prosecuted for that, correct? He could be prosecuted for that. And the defendants, all the defendants in this case can be prosecuted for the crime that the county is alleging that they're committing. All the defendants could be prosecuted for hiring illegal immigrants. Does the county have any contractual relationship with, I believe it's Idaho Migrant Council or Mr. Pacheco? No. We didn't allege that, and I'm not aware that it does, nor is any required. But in antitrust cases, typically that there is a an agreement between the parties to purchase something at a particular price, and plaintiffs often are suing because they say that that price was artificially high due to a price-fixing conspiracy of some kind or an interference with competitive forces, which is what, to some extent, the State of Hawaii was seeking to do in its case, which the Supreme Court did not allow to go forward. Now, your best cases, then, are Oakland and Diaz. Is that correct? Oakland and Diaz, yes, are the best cases. They clearly show that the county has stated an injury to its property and that there's no special commercial interest requirement imposed on the county if it sues under RICO. And you're saying that comes from Diaz, not from Oakland? That comes from the Ninth Circuit said that in Diaz, that all you need is injury that's been proximately caused by a predicate act of racketeering in order to have standing to sue. The district court refused to follow that. Now, he was an individual, however. Pardon? I'm sorry, Judge? He's an individual. He's not a county suing. Diaz. Diaz, right, was a person and not a governmental entity. All right. So, I guess would you say that those are your best cases, and if we cobble them together, would you still concede that you're asking us to go just a step further? I don't see how we're asking. Well, you're claiming that Diaz is what supports your injury, not what Oakland, because in Oakland, the county could show that they were a consumer of the sewage services. You cannot show that here. You've conceded that. In Diaz, you're saying that that's where you say that that doesn't need to be shown. But Diaz was an individual, not a county entity. Right. So, you're asking to take the county entity from one and the injury in Diaz and put that together and apply it over to the county. So, I'm saying that it's a step further. As far as I can tell, the district judge is correct in his statement that there is no applicable precedent for this exact type of case in the Ninth Circuit. So, there is no Ninth Circuit case in which a governmental entity has sued for the costs of providing services. That's true. But the Ninth Circuit has said that there's nothing special about governmental entities when they sue. The Republic of Philippines. Well, except for this point, which you seem to have conceded in the district court, and that is that the municipal cost recovery rule applies to this case, unless you can fit into an exception. You seem to have conceded that in the district court, although here you're claiming it's an affirmative defense. The district just we conceded in the district court that what the county is seeking is municipal cost recovery. Whether the – but we strongly take issue with whether that common law rule applies here in RICO. It does not, Judge Tashima. There's no RICO case or antitrust case ever in the entire country that has ever recognized the municipal cost recovery rule. Hawaii did not recognize it. Town of Hartford did not recognize it. There's no Ninth Circuit case that has ever recognized that defense in a federal question, only in diversity cases that are brought under the common law of negligence, which was in Flagstaff, how it arose, the common law of Arizona, in which the plaintiff was seeking just ordinary tort damages under state common law. In order to get where the district court went here, you would have to find that there is this additional standing requirement under RICO that applies when a governmental entity sues. The Republic of Philippines case did not find that there was any such requirement when it sued here, and it was seeking money damages. The court did not press a commercial interest injury or an antitrust injury or anything further on them. And no court has done that, except Town of Hartford did that in that case where the town really brought its case, for whatever reason, I don't know, but in the shoes and in the precedent of the Hawaii decision, in which they attempted to show that they were seeking a commercial interest injury. They wanted to plead it that way. They argued it that way. That was their theory in that case. That is not the county's theory in this case. Reading this in the proper light, then there is just no restriction that would apply to stop the county here from seeking costs that were proximately caused by an act of racketeering activity. The RICO violations that Congress put into the statute in 1996, which this Court in Mendoza v. Zirkle Fruit found that were proper, which raised no special standing requirements above and beyond the proximate cause requirements that the Supreme Court had already found existed in RICO. The defendants have argued here that the county does not have standing to sue also under the Supreme Court's recent decision in Onza v. Ideal Steel. And according to the defendants, the Supreme Court has further tightened the requirements to have proximate causation in RICO in that decision. Respectfully, we disagree with that. The Supreme Court in Onza simply said our analysis begins and ends with Holmes. All it required is some direct relation between the racketeering activity and the injury that the county had. Do you have that here? I mean, do you have that here? You've the Predicate Act is hiring illegal immigrants. Illegal aliens. Right. How does that? It seems to me there are numbers of intermediate steps that have to occur before there's any health or law enforcement cost to the county. Your Honor, the proper way to analyze that, as this Court said in Mendoza v. Zirkle, is to go through the three steps and to say, first and foremost, is there another more directly injured party that could be counted on to sue for the damage caused by the Predicate Act alleged? Well, I mean, you've got that, okay, you have the illegal alien that if they falsely apply for benefits, and then they have to actually go in and get the benefits. So there are acts in between that. The illegal immigrant – well, in Mendoza v. Zirkle, the Court pointed out that illegal immigrants cannot be counted on to sue. It doesn't break the causal chain. That case was arising under the same Predicate Acts that we've alleged here. They also said that the United States government is not a party that has been damaged and doesn't count either to break the chain of proximate causation. Well, in my view, you're asking us to extend precedent that exists. What are your best public policy arguments for why expanding RICO would be an appropriate response of this Court? Congress enacted RICO, as the Supreme Court said in Rotella v. Wood, to allow parties that have been damaged by racketeering activity to sue for money damages. It was a broad concept, as the Supreme Court said in Sedema. If the county is not allowed to sue to recover its municipal costs that it has incurred because illegal immigrants have been moved into the county and are using public services, then the county is not going to be able to recover from anyone. It just won't be able to recover. The public policy argument would be that that's unjust. It shouldn't be that way. The county has to pay services for people that are not entitled to receive public services under Federal law. The county should be able to recover from the people who are — The county is — what services is the county not supposed to supply? Now, law enforcement? Right. Well, the county — the county Federal — Congress passed 8 U.S.C. 1621 in 1996 preventing all governmental entities from giving benefits to illegal immigrants. Okay. Well, then — Except in emergency circumstances. So — It takes law enforcement out of it, because that's not a benefit. I assume you're not talking about law enforcement that benefits the undocumented alien. No. No. We're talking about, though, we — the county doesn't want to have to process illegal immigrants that get arrested for committing crimes through its criminal justice system, through its courts, put them in its jail, have to pay for them. If they weren't employed by the defendants, they wouldn't be there. What crimes have they committed? They're not being arrested for drugs, drug crimes in many situations. That has nothing to do with their being hired by the defendants. Judge, it does. If they weren't in the county working for the defendants, they wouldn't be there committing those crimes. Perhaps you should sue their parents. I think that goes too far, Your Honor. If they weren't there working for those defendants, the county — these people also wouldn't be on the indigent fund that Canyon County provides, which Congress has said illegal immigrants are not allowed to benefit from. Well, does the county then — do we have to, in calculating its injury, deduct the taxes that the undocumented workers pay? I don't think so, Your Honor. They don't pay any — Well, they benefit the county. They don't pay any taxes to the county. No sales taxes in Idaho? No. They don't pay any sales taxes to the county. They don't pay — they don't pay any taxes to the county, not that we're — not that we're aware of. And certainly none of that have been pleaded in this complaint. And the district court was obliged to interpret the complaint as it was written and not read into it additional facts that weren't there. It's just a motion to dismiss, a 12b-6 motion. There are a lot of things that could be posited to defeat claims of proximate causation, but as this Court held in Mendoza v. Zirkle, it is not appropriate for judges to read into it the arguments of counsel, their own personal life experience into these. They are required just to — But you do have to have an allegation of causation that doesn't have so many steps in it that you raise all the concerns that Anza talked about. And yes, it seems to me — I suppose if you look at Mendoza, you've got one step to make. The hiring of these undocumented workers permits lower wages, and that affects us as workers in the same enterprise. But the hiring is just not nearly as closely related to the provision of law enforcement or health services. It's — And it requires assumptions that the county would not have to give those services to other workers. It seems to me there's many more intermediate steps that have to be taken. Your Honor, if I could respond to that. The Diaz v. Gates said the causation had to be reasonably foreseeable. That was the test to be used. It is reasonably foreseeable that if a company hires illegal immigrants, that those people are going to commit crimes there in the community and end up on the public payroll. That is not too much of a stretch to break the chain of proximate causation. You have to assume they will commit crimes at a higher rate than other workers might. I don't believe so, Your Honor. You don't have to prove those things. They shouldn't have been there. If they hadn't been there, the county wouldn't have to put those people — have to pay any money for those people. Not for those people, but for some people. But, sure, they would have to pay for some people. We're talking about — and the county can determine specifically who the illegal immigrants were, who these companies hired, and which ones of them ended up on the payroll. And which — No, but Judge Cambly's point is, look, if, let's say, Sygenta has 100 field workers and these illegal aliens weren't available, they'd hire 100 more. Right. Those 100 would commit crimes. So you'd have to subtract the cost of enforcing against those crimes, wouldn't you? Well — Are you saying they wouldn't commit any crimes? No. No. No, we're not saying that, Judge. So that would go to the damage, wouldn't it? It would go to the amount of damage, but not to the fact of pleading of an injury. The amount of damage — Well, no, it would be injury if — you know, unless you could show that the illegal immigrants commit crimes at a higher rate than other workers. We can show that. We have — that is — Is that part of the allegation in your complaint? We — we didn't allege that in the complaint, but at the — at the damages phase, our expert will be able to establish that. But that goes to the fact of injury, doesn't it? No. I don't think it goes to the fact of injury. If — if the plaintiff — if Canyon County can allege that these illegal immigrants shouldn't have been on its public payroll at all, I don't think it has to prove that non-illegal immigrants would have been — a certain number of them would have been on the public payroll. It's like in an antitrust case. If you're alleging that the price was too high — What do you mean by the public payroll? I'm sorry, on the — on the receiving public benefits. I'm sorry, I misspoke. From the county. We can't allege that a much larger percentage of these people end up on the dole or getting benefits from the county than ordinary law-abiding citizens who have permanent homes in the community and live in the community. We can show that to the best of our ability through an expert. But beyond that, it's not — we are not required to show precisely to the penny every single — what the exact amount of damage would be. Well, I agree with that. But at this stage — but for instance, if these illegal immigrants weren't working for one of these companies, they might have to receive public welfare, right? You'd have to pay them even more. They wouldn't be in Canyon County. Why not? They were brought in to work for these illegal immigrants from outside the county. Well, we said they wouldn't come in anyway? No. We — no, they wouldn't be there anyway. The only — the only illegal immigrants in Canyon County are those brought in by these companies? No. We're saying that the ones that these companies hired, Your Honor, were brought in for the purpose of working there from outside the company. They ended up — a large portion of them on the company's dole, paying — where the county had to pay money for them. On the county's dole? On the county's dole, yes. The county had to expend money because of crimes that they committed and providing them with welfare services, which it wouldn't have had to have done if those defendants hadn't hired them. And — All right. Your time has expired. Thank you. Thank you, Your Honor. My name is Marie Yates. And the appellees have agreed, Your Honor, to divide our 20 minutes in two. And I'm going to do 10 minutes on the standing issue, that is whether or not the county has been injured in its business or property for purposes of RICO standing. And then my colleague, Mr. Morello, is going to do the second 10 minutes on the RICO and the causation question and any RICO pleading issues. Your Honor — All right. And present are — I see three people at counsel table. Who all is present? One person's not going to speak? Correct, Your Honor. And who is that? Mr. Steve — Cotrella. Cotrella. And who does he represent? He represents — which one, I believe? Sorrento. Sorrento. And then there isn't anyone here for Mr. Pacheco? No, actually, Mr. Pacheco and his counsel are present, Your Honor, but the appellees agreed to split time in this — All right. Okay. So all counsel and — Yes. Yes, Your Honor. All parties are represented. Go ahead. Your Honor — So whoever you represent, the arguments you're making are on behalf of all the — Correct, Your Honor. — defendants. That's correct, Your Honor, because all of the appellees take the position that the district court correctly determined that the cost to provide basic public services that the county alleges that it incurred here, the increased cost for police services or for indigent health care, that these services do not, under a correct interpretation of Section 1964 of RICO, do not constitute an injury to business or property, and here's why. On the standing issue, if you prevail on that, that's dispositive, right? Correct, Your Honor. That's right. You would not have to reach causation, although we think causation is also a dispositive argument here. Your Honor, the argument or the analysis that I think the county misses is the fact  that it was intended to adopt common law principles when it adopted RICO, and the municipal cost recovery rule that you referred to, Your Honor, is a very well-established principle of common law. It's not just this Court's decision by Judge Kennedy, now Justice Kennedy, in the Flagstaff case. That's one decision. The D.C. Circuit has recognized it. The Second Circuit has recognized it. The Seventh Circuit recognized it. And I count some 20 different states, if you count all the decisions cited in the law, which is that governmental entities are not permitted to recover against the wrongdoer who may have caused them to incur the cost of providing governmental services. The city of Bridgeton v. BP oil case that's cited in Flagstaff has an interesting line about it. It says, no one expects to receive a bill if the government apprehends a thief. And that goes to Judge Kennedy's analysis of the rationale behind the rule, which is, one, to protect the reasonable expectations of the parties, because no one expects the government to recoup its cost to act as a government and provide governmental services, and secondly, separation of powers at a local governmental level, which is that if the State legislature and the county decide to provide these services, that is a matter of the deliberative legislative process that the Court should not then readjust and say, no, the taxpayers aren't going to pay for this. Instead, Mr. Smith, who caused us to incur the services, is going to pay for that. So it's a well-established principle, and the county doesn't dispute that. They simply don't want it applied in the RICO context. And, Your Honor, we didn't emphasize in our brief enough, I think, the Second Circuit's decision in Attorney General of Canada v. RJR Reynolds. And the reason I say that is there is a sterling example of the Second Circuit applying to RICO a common law principle, a well-established common law principle, and there it was what's called a revenue rule that one sovereign will not help another sovereign enforce its revenue laws. And so the Second Circuit held under RICO that the Canadians' cost of law enforcement was not recoupable under RICO because the revenue rule would indicate that if Canada wants to spend that money on law enforcement to enforce its tax laws, another sovereign, that is the United States, would not assist. But what I think is so interesting about the Second Circuit's opinion is its analysis, because here's what it says. The law enforcement costs, and I say this is just like the law enforcement costs in this case, law enforcement costs are qualitatively different from damages suffered by private persons. Law enforcement costs sustained by the government, right? They constitute an expression of sovereign will carried out by virtue of sovereign authority. And you see, Your Honor, that's what makes these alleged damages different. They are qualitatively different. That was Judge Kennedy's analysis in Flagstaff where he was applying the common law, municipal cost recovery rule, and he said it's the nature of the claimant and the nature of the damages. That's what triggers the rule. So why are health services the same as police services? Because in this instance, Your Honor, actually the State of Idaho has a statute cited in one of the Applebee's briefs that requires the county to provide these services, and so it is a deliberative process decision from the legislature that the government is going to supply these services, the cost to be spread among the taxpayers. So if they didn't have that statute, it would be a different situation, because if people weren't entitled to health services, if they were indigent, then that wouldn't necessarily be the sovereign activity. Well, I'll say this, Your Honor. If it had not been a decision by the sovereign entity to provide the services as an act of governing, it might be a different situation. Now, the Clayton Act takes you to the same place. That's what's so interesting. Counsel says there's no case, we have no case that's applied this to RICO. That's just not true. If you read Town of West Hartford, among the litany of damages that the town there was seeking to recover was the cost of law enforcement services. And indeed, the Second Circuit, in the Attorney General of Canada case, in talking about Town of West Hartford, and this is footnote 40 in the Attorney General of Canada case, the Second Circuit characterizes Town of West Hartford as concluding its dictum, it's not a holding, but as concluding that, quote, a government's additional law enforcement costs are not recoverable under RICO. So the Second Circuit certainly thinks that's what its earlier panel said in Town of West Hartford. Now, it's true that Town of West Hartford reached that conclusion by an analogy to the Clayton Act. And my goodness, there's nothing wrong with that. The Supreme Court has held that business and property, for purposes of the standing provision in RICO, is to be read in tandem and is intending to compensate the same injury as business and property for RICO. So it's certainly appropriate. And the Supreme Court of the United States did, in Hawaii v. Standard Oil of California, take up that issue, look at the nature of the claimant there, it was the State of Hawaii, the nature of the injuries, and say, these are not the type of injuries that one would have standing for under the Clayton Act. And it's because it's an act of sovereign authority. And the Town of West Hartford, the Second Circuit looked to the Hawaii decision and reached the same conclusion with respect to the law enforcement costs in that case. So, see, we do have the Second Circuit decision. Now, it's dictum, but we do have that decision. And here's what's really interesting. When the Second Circuit wrote Attorney General of Canada and dropped that footnote 40, they pulled together in that one footnote the Town of West Hartford, which reaches this conclusion under the Clayton Act analogy, and they also cite the Municipal Cost Recovery Rule cases. So you see, the Second Circuit has already gone in that footnote where the district court went here. It has said the same rationale that underlies the Municipal Cost Recovery Rule is the U.S. Supreme Court's analysis in Hawaii. Do you think that Diaz and the County of Oakland helped appellate? I do not, Your Honor. And actually, I'll just repeat what Your Honor said. Of course, there are numerous references in the County of Oakland case to the contract, that the county had a contract, and it's trying to enforce and recover damages with respect to that contract. And that is not the situation here. And as Your Honor points out, Diaz just wasn't even dealing with a governmental entity attempting to recover under RICO, and that's the difference. And we aren't here to say that this Court should write an opinion that says there's a commercial injury requirement to have standing for a governmental entity. You don't need to go that far. The only thing that's in front of this panel is whether a governmental entity can recover for its costs to provide basic governmental services. That's all that's here. There may be other situations where a governmental entity could recover. Judge Kennedy attempted to give a few in Flagstaff. He said there could be a property, physical property damage, a torque teaser that runs into the city hall, you know, where the city owns the property. Perhaps that might be somehow connected to a racketeering and might be an injury. But where you're talking about the provision of basic public services, that's what is not within RICO's standing. And the other thing is that the county attorney's position, which may seem unrelated, but it isn't, what was the predicate act alleged against Mr. Pacheco? Mr. Pacheco, I think like the corporate defendants here, Your Honor, is alleged to have harbored, you know, within a violation of the Immigration Naturalization Act. And my colleague, Mr. Morello, is going to cover that in his ten minutes. Okay. I didn't know either. But I would like to go to your question, Your Honor, about waiver, because I do think you could read the district court's opinion as at least the district court concluding that the county did concede that the Municipal Cost Recovery Rule applies. They certainly conceded that these damages, these costs that they seek to incur, are costs that would qualify as municipal costs under the Municipal Cost Recovery Rule. So if Your Honors are prepared to look at the breadth of common law, as the Second Circuit did in AG of Canada, and see that there's this broadly recognized common law rule, I think you can reach the proper interpretation of 1964c with all of the tools that are – have been, you know, laid at our disposal by the U.S. Supreme Court, which has told us where to go, to the analogy to the Clayton Act and to the common law principles. And, Your Honor, if I could allow Mr. Morello now. Thank you for your argument. Good morning, Your Honor. Juan Murillo on behalf of the appellees. Good morning. I just want to start with addressing your court question, Your Honor, about whether there are any public policy reasons here to extend liability on the RICO, and I believe that there are not. Number one, we are not the ones who are asking you to expand liability on the RICO. It is the appellee who's asking you to do that, and there's simply no good public policy reason to do that, because, number one – Well, there are a lot of people out there that they're saying, we're having – you know, we're paying our taxes, we're doing this, and we're having to pay for all these people that shouldn't – that are illegal. And anyone that is, you know, is supporting that or is somehow part of that problem should have to pay the ticket. It shouldn't be the people that are, you know, here legally and paying their taxes. Your Honor, that would constitute a deviation of over 100 years' worth of precedent in which federal courts, state courts have held that governments should not be able to recover for what are bottom paradigmatic government services. This has been the case for over 100 years. It's been the case in the context of federal cases, state cases. It's involved federal government claims. It's involved state government claims. It's involved all sorts of torts – negligence, nuisance, strict liability. What you would have to do here is to deviate for the long progeny of cases that comprise over 100 years, and we would have been – If we deviated, it would also apply to legal citizens as well, correct? Then counties could sue people that are here legally for services that a sovereign otherwise provides, correct? Absolutely. I think there are really only two ways here where you can recover under this rule. There has to be some commercial relationship, either some quasi-contractual relationship or some other type of commercial relationship, or there has to be some sort of property injury. I think those are the two contexts in which a governmental entity could recover under this rule. And I think the practical effect, Your Honors, about expanding the rule in this context is you're essentially eviscerating the proximate cause requirements of RICO, and you're And I think with respect to the other public policy point, the U.S. government can – and this was the subject of questioning by the Court – the U.S. federal government can prosecute individuals for the alleged predicate offenses in this case. Secondly, this Court in Mendoza held that legal employees could bring a cognizable claim under RICO for their purported injuries. There's simply no reason to go beyond those two potential victims. The plaintiffs in this case have absolutely – have not predicated their theory on anything that would compel you to expand civil RICO for any reason. And one other important point that I'd like to make is just that you brought out in the questions that you were asking. The complexity of the calculus that would have to be engaged in here to determine the injury. Number one, they would have to establish that we hired illegal aliens, that our clients hired illegal aliens. That in and of itself would comprise a very difficult analysis. Number two, they would have to identify the folks that we allegedly hired who allegedly came into contact with federal enforcement – I'm sorry – with enforcement services. How are they going to do that? Secondly, they're going to have to identify the people who received health care services. And there are federal and state statutes that reimburse the county for the provision of federal enforcement services, incarceration of illegal aliens, and also for the provision of emergency care. So you're going to have to determine, well, did the county seek reimbursement? Were they, in fact, reimbursed? Then you're going to have to analyze whether or not the contributions that the defendants made canceled any expenditures. We provide health care benefits. So did we even incur any injury? Third, you're going to have to analyze whether or not, at bottom, the net contributions that the illegal aliens, alleged illegal aliens, made in taxes offset any damages to the county. That's precisely the kind of complex analysis that the Supreme Court in Anza said is not the type of analysis that is to be done by a district court or a jury in a civil recal case. And, indeed, the Court said that it is at this stage, not at the summary judgment stage, not pretrial, not at trial, that these types of claims are supposed to be scrutinized, Your Honor. Just a couple of other points to address some issues that came up that you addressed. Number one, U.S. v. Standard Oil was a U.S. Supreme Court case in which the Federal Government sought reimbursement for the health care services provided to an injured soldier. And the Court held that under the municipal cost recovery rule, the Federal Government could not recover those services. You asked about whether there was a case involving health care services. One other point that I wanted to make, even if they are able to overcome the municipal cost recovery rule, number one. Number two, even if they're ever able to overcome the proximate cause analysis as required by the Supreme Court in Anza, you still have to have a distinct enterprise. And by the plaintiff's own allegations, and I refer you specifically to the First Amendment complaint, paragraphs 18, 19, and 20, there is really no independence between us and the enterprise. Indeed, in paragraph 18, they say that the temp agencies, as you know, the enterprise is supposed to be comprised of the temp agencies and the defendants. They say the temp agencies are, quote, just fronts for the employers. In paragraph 19, they say that the temp agency's employees are really at bottom our own employees. And in paragraph 20, they say that we have not really outsourced this function to temp agencies. By their own allegations in their own complaint, they're saying that we are operating ourselves improperly, not that we're operating some other enterprise. And as the Supreme Court has said in Reeves and in Kushner, you have to have some distinctiveness between the defendant and the enterprise. There's such – there is simply no such distinctiveness here. And moreover, we're not operating a separate enterprise. According to their own allegations, we're operating ourselves unlawfully. That's impermissible under the Supreme Court cases that I just cited. Finally, with respect to their pleading requirements, if you accept their interpretation of what harboring requires, you're essentially rendering the harboring provision a nullity. You cannot simply have employment equal harboring. There has to be something else. This Court has held that something else has to be to afford shelter to. There's simply no allegation here that we were doing anything other than employing these alleged illegal aliens, no allegation whatsoever about anything in addition to that to constitute harboring. So at a minimum, as a matter of law, the harboring allegations fail. With respect to employment, there's no allegation. What does that argument go to, that there's no sufficiently pleaded predicate act? That is correct, Your Honor. Well, now, if you get to that point on the predicate act, let's just say if you lose on all the other – you lose on standing, you lose on proximate cause, you lose on all of those. The predicate act part of it, if that were the only defect, that could possibly be cured by pleading, correct? Your Honor, the reason they didn't plead the facts here is because they simply can't prove the facts. If you compare this complaint with every other RICO immigration complaint Just assuming, you know, the others are dispositive. They're sure winners for you. But if it got to that point, it would seem to me that that would be the one area where they would probably have an opportunity. If they have the necessary factual predicate. If they did. But it is 12B6, right? That's correct. That's correct. If the Court has no further questions, I'm done. All right. Does any of your other counsel want to use the time? This side still has – you still have – is this time they have remaining? You still have two minutes and 20 seconds. So, if anyone on this side wants to use it or forever hold your peace. All right.  I'll give appellant one minute for rebuttal. I think, Your Honor, I asked for five. Well, you're not getting five. So, you can have one. Okay. Your Honor, thank you very much. The most important point, I believe, is they say that there's a requirement of a contractual relationship required in order for the county to sue. In Mendoza versus Zirkle, there was a contractual relationship between the employees and the employer that didn't stop the Ninth Circuit from holding that the employees nevertheless could still bring their RICO case for their damages. The complexity of the injuries were acknowledged by the Ninth Circuit in Mendoza versus Zirkle, and the Court said that that had to be dealt with by experts later in the proceeding. And finally, if Chattanooga could sue the City of Atlanta for having to pay excess prices for its pipes, which the Supreme Court said was proper under the Antitrust Statute in 1906, and the County of Oakland had to pay excess prices for sewerage services, why can't Canyon County sue? Those are the same municipal recoveries that they are seeking for services that they provide for their citizens. And I thank the Court very much. All right. Thank you, both sides, for your excellent argument in this matter, and the case will now stand submitted. The Court may call the ayes. Court is adjourned until tomorrow morning at 9 o'clock.
judges: Canby, Tashima, Callahan